JOHN SPURGEON, PLAINTIFF IN ERROR, v. CARRIE G. CLEMMONS, DEFENDANT IN ERROR.

1. **New Trial.**  If a verdict is clearly against the weight of the evidence a new trial should be granted.

2. ———: ——— Where on the trial of a defendant under the bastardy act an *alibi* was established by the testimony of two credible witnesses in addition to that of the accused, as against the unsupported testimony of the mother of the child—*Held*, That the verdict should be set aside as being against the evidence.

3. **Bastardy Judgment.**  In an action for bastardy, on a verdict of guilty, it is the duty of the court to adjudge the defendant to be the reputed father of the bastard child, and a failure to do so will render the orders of the court for the support of the child erroneous.

ERROR from the district court of Cass county.

*Chapman & Sprague*, for defendant in error, cited *Lessee of Muhlenburg's Heirs v. Florence*, 5 Ohio, 248. *State v. Tomlinson*, 11 Iowa, 401.  *McCoy v. The People*, 65 Ill., 439.  *Speiger v. The State*, 32 Wis., 400.

*George S. Smith* and *J. H. Broady*, for defendant in error.

LAKE, Ch. J.

The case in the court below was a prosecution under the bastardy act of 1875, and the principal point in dis-

pute was the paternity of the child which was born before the proceedings were instituted. In establishing the guilt of the plaintiff in error the prosecution depended solely upon the unsupported testimony of Carrie G. Clemmons, the complaining witness. The substance of her testimony, as shown by the record, was that Spurgeon commenced his visits at her father's house, in Rock Bluffs, about the first of November, 1874, and after about two or three weeks, under a promise of marriage, commenced having sexual intercourse with her, which resulted in the birth of a bastard child on the fourteenth of August, 1875. In addition to this she swore positively that she had sexual intercourse with no one but John Spurgeon, the accused.

On the other hand, we have the testimony of Spurgeon himself, in which he denies that he had connection with the prosecuting witness at the time charged, or during the months of September, October, November, or December of that year. And on this point he is supported by the uncontradicted testimony of two witnesses, W. L. Ollier, and Carrie Ollier his wife, that during the months of October, November, and December, 1874, Spurgeon lived with them in Mills county, Iowa, some thirty miles from Rock Bluffs, where the alleged intercourse took place, and that from the fifteenth of September to the twenty-fourth of December he was not absent from that place at all. If this testimony be worthy of belief—if these two witnesses are credible, and there is nothing in the record to impeach them—it would seem to establish a complete and perfect defense, of which the accused should have the benefit.

If Spurgeon were not in fact at work for Ollier in Iowa at the time, or if he visited Miss Clemmons in Rock Bluffs as frequently as he must have done if her story is true, it does not seem to us that it would be at all difficult to bring some disinterested testimony to establish

it. But the prosecution having failed to produce a syllable of rebutting evidence upon this point, or anything to discredit Ollier and his wife, their testimony cannot be disregarded, but must be given some weight in the decision of the case.

By the testimony, as preserved in the bill of exceptions, an *alibi* was clearly proven, and a new trial on this ground should have been granted.

The only remaining point which we care to notice is the failure of the court to adjudge the accused to be the reputed father of the bastard child, as required by section six of the act in question, upon a verdict of guilty being returned. This section provides that: " In case the jury find the defendant guilty, or such accused person before the trial shall confess in court that the accusation is true, *he shall be judged the reputed father of such child,*" etc. A failure to observe this requirement of the statute would of itself render the judgment erroneous and fatally defective.

The judgment and order of the district court are reversed, the verdict set aside, and a new trial awarded.

REVERSED AND REMANDED.